# UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

**FILED**
AUG 3 1 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### AFFIDAVIT OF COMPLAINT (OR INDICTMENT) IN REMOVAL PROCEEDINGS

MAGISTRATE JUDGE VALDEZ

UNITED STATES OF AMERICA )
v. )
JOSE ALFREDO AMARAL-ESTRADA )
A/K/A "ALFREDO" )
)

CASE NUMBER: **05CR0754**

The undersigned Affiant personally appeared before __MARIA VALDEZ__, a United States Magistrate Judge, and being duly sworn on oath, states: That at the __SOUTHERN DISTRICT OF INDIANA__, one __JOSE ALFREDO AMARAL-ESTRADA__ was charged in an Indictment with the violation of Section __846__ of the United States Code, Title __21__ (Conspiracy to Distribute Cocaine) (See Exhibit A), and that, on the basis of Affiant's investigation and information received concerning the case through official channels, does hereby certify that a Warrant for Arrest is outstanding for the arrest of said defendant JOSE ALFREDO AMARAL-ESTRADA. (See Exhibit B).

Wherefore, Affiant prays that the defendant be dealt with according to law.

_____
Jeanna Bryant
Special Agent, Drug Enforcement Administration

Subscribed and Sworn to before me this
31st day of __August__, 2005.

_____
MARIA VALDEZ
United States Magistrate Judge

A.U.S.A Leonard A. Gail

Bond set [or recommended] by issuing Court at _____

# United States District Court SEALED

__SOUTHERN__ DISTRICT OF __INDIANA__

UNITED STATES OF AMERICA
V.
JOSE ALFREDO AMARAL-ESTRADA,
a/k/a "Alfredo"

**WARRANT FOR ARREST**

CASE NUMBER: IP 05-43-CR-05-B/F

To: The United States Marshal
and any Authorized United States Officer

**YOU ARE HEREBY COMMANDED** to arrest ___JOSE ALFREDO AMARAL-ESTRADA,_ a/k/a "Alfredo"___ and bring him or her forthwith to the nearest magistrate to answer a(n)

_X_ Superseding Indictment __ Information __ Complaint __ Order of Court __ Violation Notice __ Probation Violation Petition

charging him or her with (brief description of offense)

conspiracy to possess with the intent to distribute and to distribute of 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Controlled Substance

in violation of Title _21_ United States Code, Section(s) _841(a)(1) and 846_

| Laura A. Briggs | Clerk, United States District Court |
|---|---|
| Name of Issuing Officer | Title of Issuing Officer |
| /s/ Laura Briggs (Signature) | July 2, 2005 Indianapolis |
| Signature of Issuing Officer CLERK | Date and Location |
| /s/ (By) Deputy Clerk | by _____ Name of Judicial Officer |

Bail fixed at $ _____

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

THE FOLLOWING IS FURNISHED FOR INFORMATION ONLY:

DEFENDANT'S NAME: JOSE ALFREDO AMARAL-ESTRADA

ALIAS: "Alfredo"

LAST KNOWN RESIDENCE: Chicago MCC

LAST KNOWN EMPLOYMENT:

PLACE OF BIRTH:

DATE OF BIRTH: 12-6-79

SOCIAL SECURITY NUMBER:

HEIGHT: 5' 6"                                    WEIGHT: 140 lbs.

SEX: Male                                        RACE:

HAIR: Black                                      EYES: Brown

SCARS, TATTOOS, OTHER DISTINGUISHING MARKS:


FBI NUMBER:

COMPLETE DESCRIPTION OF AUTO:

INVESTIGATIVE AGENCY AND ADDRESS: Drug Enforcement Administration, 575 North Pennsylvania, Suite 408, Indianapolis, Indiana 46204

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. IP 05-43-CR-    -B/F |
| JUAN CARLOS BERMUDEZ, a/k/a "Animal," a/k/a "Oso," | ) | -01 |
| JAVIER RODRIGUEZ, a/k/a "Ramon Tellez," | ) | -02 |
| JOSE CALDERON, a/k/a "Felix," | ) | -03 |
| LUIS CORREA, a/k/a "Licenciado," | ) | -04 |
| JOSE ALFREDO AMARAL-ESTRADA, a/k/a "Alfredo," | ) | -05 |
| VERONICA AVILA, | ) | -06 |
| JOSE IRIBE, | ) | -07 |
| LEON B. ANDERSON, | ) | -08 |
| CHARLES ANDERSON, | ) | -09 |
| ANDRES BUTRON, a/k/a "Chiquilin," | ) | -10 |
| JOSE ZAVALA, | ) | -11 |
| FREDDY ADAN SOSA-VERDEJA, a/k/a "Cachito," | ) | -12 |
| EVARARDO LIRA-ESQUIVEL, | ) | -13 |
| FLORA ZAVALA-GUTIERREZ, a/k/a "Bertha Zavala-Gutierrez," | ) | -14 |
| DARRELL PHILLIPS, a/k/a "D," | ) | -15 |
| WILLIE POWELL, a/k/a "Bam," | ) | -16 |
| ROBERT MILLER, and | ) | -17 |
| EDDIE CUNNINGHAM, | ) | -18 |
| Defendants. | ) | |

## SUPERSEDING INDICTMENT

### COUNT 1

The Grand Jury charges that:

Beginning in or around May 2003, the exact date being unknown to the Grand Jury, and continuing up to and including May 9, 2005, within the Southern District of Indiana, Indianapolis Division and elsewhere, JUAN CARLOS BERMUDEZ, a/k/a "Animal," a/k/a "Oso," JAVIER RODRIGUEZ, a/k/a "Ramon Tellez," JOSE CALDERON, a/k/a "Felix," LUIS CORREA, a/k/a "Licenciado," JOSE ALFREDO AMARAL-ESTRADA, a/k/a "Alfredo," VERONICA AVILA, JOSE IRIBE, LEON B. ANDERSON, CHARLES ANDERSON, ANDRES BUTRON, a/k/a "Chiquilin," JOSE ZAVALA, FREDDY ADAN SOSA-VERDEJA, a/k/a "Cachito," EVARARDO LIRA-ESQUIVEL, DARRELL PHILLIPS, a/k/a "D," WILLIE POWELL, a/k/a "Bam," ROBERT MILLER, and EDDIE CUNNINGHAM, the defendants, did knowingly conspire together with Kenneth Davenport, Maria M. Garnica, and Rafael Ravelo, not defendants in this indictment, and with diverse other persons known and unknown to the Grand Jury, to possess with intent to distribute and to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

### Manner and Means

1. JUAN CARLOS BERMUDEZ, a/k/a "Animal," a/k/a "Oso," (hereinafter BERMUDEZ), is the leader of this conspiracy to possess with the intent to distribute and to distribute cocaine. As leader of the conspiracy BERMUDEZ is responsible for acquiring large quantities of cocaine from his sources of supply in the Republic of Mexico which is then smuggled into the United States of America and distributed to mid-level cocaine distributors in Indianapolis, Indiana and Chicago, Illinois. JAVIER RODRIGUEZ (hereinafter RODRIGUEZ) and JOSE CALDERON, a/k/a "Felix," (hereinafter CALDERON) works in concert with

2

RODRIGUEZ to acquire the cocaine and distribute it to the mid-level cocaine distributors in Indianapolis. LEON ANDERSON (hereinafter L. ANDERSON) and JOSE ZAVALA (hereinafter ZAVALA) are mid-level cocaine distributors. During the period of the conspiracy, the members of the conspiracy distributed in excess of five kilograms of cocaine.

2. JUAN CARLOS BERMUDEZ (hereinafter BERMUDEZ), LUIS CORREA, a/k/a "Licenciado," (hereinafter CORREA) and JOSE ALFREDO AMARAL-ESTRADA, a/k/a "Alfredo," (hereinafter ALFREDO) are sources of supply for multiple kilograms of cocaine which is subsequently redistributed to the members of the conspiracy. Often this cocaine is "fronted," or advanced on credit to RODRIGUEZ by BERMUDEZ and/or CORREA and/or ALFREDO. The cocaine is transported in concealed compartments which are built into vehicles and driven by couriers who are payed to transport the cocaine. The couriers of cocaine include: JOSE IRIBE (hereinafter IRIBE), Maria M. Garnica (hereinafter GARNICA), VERONICA AVILA (hereinafter AVILA), and FREDDY ADAN SOSA-VERDEJA, a/k/a "Cachito" (hereinafter SOSA-VERDEJA). At times during this conspiracy, BERMUDEZ resides in the Republic of Mexico. During the time period of the conspiracy BERMUDEZ and RODRIGUEZ utilized an individual who is known to the Grand Jury (hereinafter Individual #1) and IRIBE to smuggle United States currency into Mexico from the United States and to smuggle multiple kilograms of cocaine from Mexico into the United States.

3. After L. ANDERSON acquires cocaine from RODRIGUEZ, L. ANDERSON distributes the cocaine to mid-level cocaine distributors. CHARLES ANDERSON (hereinafter C. ANDERSON), DARRELL PHILLIPS (hereinafter PHILLIPS), WILLIE POWELL (hereinafter POWELL), ROBERT MILLER (hereinafter MILLER), EDDIE CUNNINGHAM

3

(hereinafter CUNNINGHAM), and Kenneth Davenport are mid-level cocaine distributors. Often the cocaine distributed by L. ANDERSON is processed into cocaine base by adding baking soda and "cooking" the cocaine into cocaine base which is commonly known as "crack".

4. Members of the conspiracy maintained sizeable amounts of easily accessible cash to purchase large quantities of cocaine as well as large quantities of cocaine to distribute to the mid-level distributors. Hoards of cash and bulk quantities of cocaine are maintained in "stash houses," often in the residences of trusted confederates. During the conspiracy, the residences located at 365 Catherwood, Indianapolis, Indiana, 6143 Oak, Indianapolis, Indiana, 5352 West Demming, Chicago, Illinois, 1746 W. 47th Street, Chicago, Illinois, and 4741 S. Komensky, Chicago, Illinois, were used as "stash houses." In the stash houses, records or ledgers were maintained of cocaine distributed and money owed for that cocaine. EVARARDO LIRA-ESQUIVEL kept records of the amounts of cocaine distributed and money owed for the conspiracy.

5. During the charged conspiracy members of the conspiracy collected United States currency proceeds from the distribution of cocaine, and transported that currency to BERMUDEZ in the Republic of Mexico. During the charged conspiracy, ANDRES BUTRON, a/k/a "Chiquilin," (hereinafter BUTRON) collected United States currency from RODRIGUEZ's cocaine distribution in Indianapolis, Indiana for the purpose of transporting that currency to BERMUDEZ in the Republic of Mexico.

6. During the course of the conspiracy members of the conspiracy possessed firearms, including assault rifles, pistols and revolvers. Firearms are a "tool of the trade" for a drug trafficker, as they are utilized to safeguard narcotics, United States currency, and the physical

well being of the narcotics trafficker from rival traffickers. RODRIGUEZ, CALDERON, and L. ANDERSON possessed firearms during the course of the conspiracy.

7. During the charged conspiracy, the members of the conspiracy spoke on the telephone using code language to advance the goals of the conspiracy.

### Overt Acts

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, which is to possess with the intent to distribute and to distribute cocaine, the members of the conspiracy did commit, among others, the following overt acts:

1. On or about May 30, 2003, BERMUDEZ and Rafael Ravelo entered the United States of America from the Republic of Mexico at Brownsville, Texas.

2. On or about October 1, 2003, Rafael Ravelo possessed approximately $1,147,000.00 in United States currency and approximately 5 kilograms of cocaine. The currency and cocaine were seized by law enforcement.

3. On or about October 3, 2003, BERMUDEZ telephoned Rafael Ravelo regarding the seizure of the currency and cocaine.

4. On or about October 4, 2003, BERMUDEZ telephoned Rafael Ravelo and requested Rafael Ravelo to fax him (BERMUDEZ) a copy of the paper work documenting the seizure of currency and cocaine.

5. Later, and still on or about October 4, 2003, Rafael Ravelo faxed the paper work documenting the seizure to the fax number provided by BERMUDEZ.

6. Later, and still on or about October 4, 2003, BERMUDEZ telephoned Rafael Ravelo and advised Rafael Ravelo that everything was O.K. in Mexico, that they would take care of him,

5

and that there would be work for Rafael Ravelo when he got to Mexico.

7. On or about December 18, 2003, BUTRON and BERMUDEZ were in a white Ford Explorer, registered to Ramon Tellez (RODRIGUEZ).

8. On or about February 18, 2004, BUTRON possessed $192,413.00 in United States currency. The currency was the proceeds of cocaine distribution.

9. In or around late April 2004, BERMUDEZ provided Individual #1 with United States currency to purchase a 2004 Pontiac Aztec. As soon as Individual #1 properly registered and insured the Aztec, he drove the Aztec to BERMUDEZ in Guadalajara, Mexico where BERMUDEZ had a concealed compartment installed in the Aztec.

10. In or around May, 2004, upon completion of the compartment, BERMUDEZ gave Individual #1 18 kilograms of cocaine to deliver to Indianapolis, Indiana. At the direction of BERMUDEZ, Individual #1 drove the Aztec with 18 kilograms of cocaine in the concealed compartment from Guadalajara, Mexico to Indianapolis, Indiana and provided the cocaine to RODRIGUEZ and CALDERON. The cocaine was unloaded in the garage of the residence located at 6143 Oak Street, Indianapolis, Indiana.

11. Individual #1 remained in Indianapolis, Indiana, until RODRIGUEZ and CALDERON distributed the cocaine and collected money for it. Once RODRIGUEZ and CALDERON had collected the money for the cocaine, the money was concealed in the compartment of the Aztec in the garage located at 6143 Oak St., Indianapolis, Indiana.

12. After the money was loaded in the Aztec, Individual #1 drove the Aztec with the money from Indianapolis, Indiana to Guadalajara, Mexico where he delivered it to BERMUDEZ. BERMUDEZ then paid Individual #1 $25,000.00 upon delivery of the money to BERMUDEZ.

13. Approximately 15 to 20 days later in late May or early June, 2004, BERMUDEZ gave Individual #1 17 to 19 kilograms of cocaine in order to make a second trip to Indianapolis. At the direction of BERMUDEZ, Individual #1 drove the Aztec with the 17-19 kilograms of cocaine in the concealed compartment from Guadalajara, Mexico to Indianapolis, Indiana and provided the cocaine to RODRIGUEZ and CALDERON. The cocaine was unloaded in the garage of the residence located at 6143 Oak Street, Indianapolis, Indiana.

14. As with the first trip, Individual #1 remained in Indianapolis, Indiana until RODRIGUEZ and CALDERON distributed the cocaine and collected money for it. Once RODRIGUEZ and CALDERON had collected the money for the cocaine, the money was concealed in the compartment of the Aztec in the garage located at 6143 Oak St., Indianapolis, Indiana.

15. After the money was loaded in the Aztec, Individual #1 drove the Aztec with the money from Indianapolis, Indiana to Guadalajara, Mexico where he delivered it to BERMUDEZ. BERMUDEZ then paid Individual #1 $25,000.00 upon delivery of the money to BERMUDEZ.

16. Approximately one day later, BERMUDEZ gave Individual #1 17 to 19 kilograms of cocaine in order to make a third trip to Indianapolis, Indiana. At the direction of BERMUDEZ, Individual #1 drove the Aztec with the 17-19 kilograms of cocaine in the concealed compartment from Guadalajara, Mexico to Indianapolis, Indiana and provided the cocaine to RODRIGUEZ and CALDERON. The cocaine was unloaded in the garage of the residence located at 6143 Oak Street, Indianapolis, Indiana.

17. As with the first two trips, Individual #1 remained in Indianapolis, Indiana, until RODRIGUEZ and CALDERON distributed the cocaine and collected money for it. Once

RODRIGUEZ and CALDERON had collected the money for the cocaine, the money was concealed in the compartment of the Aztec in the garage located at 6143 Oak St., Indianapolis, Indiana.

18. After the money was loaded in the Aztec, Individual #1 drove the Aztec with the money from Indianapolis, Indiana to Guadalajara, Mexico where he delivered it to BERMUDEZ. BERMUDEZ then paid Individual #1 $25,000.00 upon delivery of the money to BERMUDEZ.

19. On or about July 7, 2004, RODRIGUEZ provided approximately $107,000.00 in United States currency to Jose Del Toro, not a defendant in this indictment.

20. On or about July 8, 2004, Jose Del Toro, not a defendant in this indictment, possessed the approximate $107,000.00 United States currency provided to him by RODRIGUEZ. The currency was located in a concealed compartment in the bumper of a 2003 Mitsubishi driven by Jose Del Toro.

21. In or around July, 2004, RODRIGUEZ and Individual #1 traveled to Chicago, Illinois where they obtained approximately 13 kilograms of cocaine from a Hispanic male who is unknown to the Grand Jury. After obtaining the 13 kilograms of cocaine, RODRIGUEZ and Individual #1 concealed the cocaine in a compartment in a 2001 Aztec and brought the cocaine back to 6143 Oak St., Indianapolis, Indiana.

22. Soon thereafter, and still in or around July 2004, CALDERON and Individual #1 traveled to Chicago, Illinois in the 2001 Aztec where they obtained an additional 13 kilograms of cocaine. After obtaining the 13 kilograms of cocaine, CALDERON and Individual #1 concealed the cocaine in a compartment in the 2001 Aztec and brought the cocaine back to 6143 Oak St., Indianapolis, Indiana.

23. Approximately two days later, RODRIGUEZ provided Individual #1 with $130,000.00 which was concealed in a compartment in the 2001 Aztec and instructed Individual #1 to travel to the Los Angeles, California area to obtain 10 kilograms of cocaine from one of RODRIGUEZ's source of supply for cocaine. While in the Los Angeles, California area, Individual #1 provided the $130,000.00 to "Luis" and obtained 10 kilograms of cocaine. Individual #1 concealed the cocaine in a compartment in the 2001 Aztec.

24. On or about July 17, 2004, Individual #1 was arrested in the Southern District of Indiana with the 10 kilograms of cocaine he obtained from "Luis" and intended to deliver to RODRIGUEZ.

25. On or about October 28, 2004, RODRIGUEZ and CALDERON distributed approximately one ounce of cocaine.

26. On or about November 19, 2004, RODRIGUEZ and CALDERON distributed approximately one kilogram of cocaine and received $18,000.00 United States currency.

27. On or about December 24, 2004, RODRIGUEZ telephoned BUTRON and BUTRON informed RODRIGUEZ that he (BUTRON) was obtaining cocaine from his source of supply, and would be able to do more business on January 5th.

28. On or about December 25, 2004, RODRIGUEZ telephoned EVARARDO LIRA-ESQUIVEL and discussed money that RODRIGUEZ owed for cocaine.

29. On or on January 1, 2005, RODRIGUEZ met with IRIBE in Indianapolis to discuss IRIBE working for RODRIGUEZ as a courier to transport cocaine from Mexico to Indianapolis, Indiana.

30. On or about January 3, 2005, RODRIGUEZ and IRIBE purchased a 1999 Ford Windstar Van for the purpose of installing a concealed compartment into the van so that IRIBE could use the van to transport cocaine from Mexico to Indianapolis, Indiana.

31. On or about January 5, 2005, RODRIGUEZ and CALDERON traveled to the Chicago, Illinois and obtained a quantity of cocaine.

32. On or about January 6, 2005, RODRIGUEZ and CALDERON fronted a portion of the cocaine acquired in Chicago, Illinois to L. ANDERSON at 3021 Campbell Ave., Indianapolis, Indiana. Subsequently, L. ANDERSON provided a portion of that cocaine to C. ANDERSON, PHILLIPS, POWELL, MILLER, CUNNINGHAM, and Kenneth Davenport.

33. On or about January 9, 2005, RODRIGUEZ and CALDERON collected United States currency from L. ANDERSON for the previously fronted cocaine.

34. On or about January 10, 2005, RODRIGUEZ and CALDERON traveled to the Chicago, IL area in a maroon Chevrolet Monte Carlo belonging to RODRIGUEZ where they obtained cocaine from BUTRON. RODRIGUEZ and CALDERON then returned to 6143 Oak St., Indianapolis, Indiana.

35. On or about January 25, 2005, RODRIGUEZ and CALDERON traveled to L. ANDERSON's residence at 3021 N. Campbell, Indianapolis, Indiana in order to collect money for cocaine previously fronted to L. ANDERSON.

36. From on or about February 5, 2005 up to and including or about February 7, 2005, at the direction of CORREA, GARNICA and AVILA transported cocaine from the state of California to Indianpolis, Indiana.

37. Later and still on or about February 7, 2005, RODRIGUEZ and CALDERON met with GARNICA and AVILA and led GARNICA and AVILA to 365 S. Catherwood, Indianapolis, Indiana where RODRIGUEZ and CALDERON had GARNICA and AVILA park the vehicle used to transport the cocaine (a 1996 Plymouth Voyager) in the garage of 365 S. Catherwood, Indianapolis, Indiana.

38. Later and still on February 7, 2005, RODRIGUEZ and CALDERON utilized a 1995 Jeep Grand Cherokee to deliver the cocaine to L. ANDERSON. Subsequently, L. ANDERSON provided a portion of that cocaine to C. ANDERSON, PHILLIPS, POWELL, MILLER, CUNNINGHAM, and Kenneth Davenport.

39. On or about February 9, 2005, GARNICA and AVILA left Indianapolis, Indiana enroute to California with United States currency to be delivered to CORREA as payment for the cocaine delivered on February 7, 2005.

40. Later and still on February 9, 2005, RODRIGUEZ, CALDERON and IRIBE traveled to 6143 Oak St., Indianapolis, Indiana where they removed the previously mentioned 1999 Ford Windstar from the garage of 6143 Oak St. IRIBE then left in the Ford Windstar at the direction of RODRIGUEZ to travel to Guadalajara, Mexico to obtain cocaine.

41. Later and still on February 9, 2005, IRIBE traveled to Chicago, Illinois where he picked up members of his family.

42. On or about February 10, 2005, IRIBE left Chicago, Illinois to travel to Guadalajara, Mexico to obtain cocaine for RODRIGUEZ.

43. On or about February 17, 2005, BERMUDEZ agreed to provide cocaine to RODRIGUEZ in Guadalajara, Mexico at a price of between $8700.00 and $8800.00 per

11

kilogram of cocaine. RODRIGUEZ agreed to purchase the cocaine at that price and informed BERMUDEZ that RODRIGUEZ's "guy" (referring to IRIBE) is "down there" (referring to Guadalajara, Mexico) and will provide BERMUDEZ with "the papers" (referring to United States currency).

44. On or about February 20, 2005, at the direction of CORREA, GARNICA and AVILA transported cocaine from the state of California to Indianpolis, Indiana where they provided that cocaine to RODRIGUEZ and CALDERON at 365 S. Catherwood, Indianapolis, Indiana.

45. On or about February 25, 2005, IRIBE entered into the United States from the Republic of Mexico at Laredo, Texas with approximately six kilograms of cocaine IRIBE acquired through BERMUDEZ and intended to provide to RODRIGUEZ.

46. On or about March 2, 2005, ALFREDO telephoned RODRIGUEZ and informed RODRIGUEZ that he was preparing a vehicle with hidden compartments to transport cocaine.

47. On or about March 3, 2005, ALFREDO telephoned RODRIGUEZ and agreed to provide him with fifteen kilograms of cocaine. ALFREDO informed RODRIGUEZ that "Cachito" (the nickname for SOSA-VERDEJA) would be transporting the cocaine to Indianapolis, Indiana from Chicago, Illinois.

48. On or about March 3, 2005, BERMUDEZ inquired of RODRIGUEZ whether the cocaine had successfully arrived in Indianpolis, Indiana, and agreed to provide another six kilograms of cocaine in the future. RODRIGUEZ lied to BERMUDEZ and told BERMUDEZ "everything got here okay."

49. On or about March 4, 2005, SOSA-VERDEJA provided approximately fifteen kilograms of cocaine to RODRIGUEZ and CALDERON.

50. Later and still on or about March 4, 2005, RODRIGUEZ telephoned ALFREDO and complained about the cocaine "being short."

51. Later and still on or about March 4, 2005 EVARARDO LIRA-ESQUIVEL recorded the amount of cocaine that was distributed by SOSA-VERDEJA to RODRIGUEZ and the amount of money that RODRIGUEZ owed for that cocaine.

52. Later and still on or about March 4, 2005, RODRIGUEZ and CALDERON provided a portion of that cocaine to ZAVALA.

53. On or about March 5, 2005, RODRIGUEZ and CALDERON provided a portion of that cocaine to L. ANDERSON. Subsequently, L. ANDERSON provided a portion of that cocaine to PHILLIPS and Kenneth Davenport.

54. Later, and still on or about March 5, 2005, L. ANDERSON transported the cocaine to the duplex located at 1306/1308 Tecumseh, Indianapolis, Indiana.

55. Later, and still on or about March 5, 2005, L. ANDERSON provided cocaine to DAVENPORT.

56. Later, and still on or about March 5, 2005, L. ANDERSON and C. ANDERSON possessed in their duplex located at 1306/1308 Tecumseh, Indianapolis, Indiana, 142 grams of "crack" cocaine base, baking soda, and pyrex mixing bowls.

57. On or about March 7, 2005, RODRIGUEZ and CALDERON possessed at 365 Catherwood, Indianapolis, Indiana, cocaine, two semiautomatic handguns and materials utilized in the packaging of cocaine.

58. On or about March 7, 2005, RODRIGUEZ and CALDERON possessed at 6143 Oak Street, Indianapolis, Indiana, approximately 14 kilograms of cocaine and $57,440.00 in United States currency.

59. On or about March 7, 2005, L. Anderson possessed at his residence located at 3021 N. Campbell, Indianapolis, Indiana, a semiautomatic handgun, two semiautomatic rifles, and a set of digital scales.

60. On or about May 9, 2005 ALFREDO possessed in a car he was driving approximately $250,000.00 in United States currency.

61. On or about May 9, 2005 ALFREDO and EVARARDO LIRA-ESQUIVEL possessed at their stash house located at 5352 West Demming, Chicago, Illinois, approximately 12 kilograms of cocaine, approximately $20,000.00 in United States currency, a semiautomatic handgun, drug ledgers, and approximately 300 empty kilogram sized wrappers that had previously contained cocaine.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

The Grand Jury further charges that:

Beginning in or around May 2003, the exact date being unknown to the Grand Jury, and continuing up to and including May 9, 2005, within the Southern District of Indiana, Indianapolis Division and elsewhere, JUAN CARLOS BERMUDEZ, a/k/a "Animal," a/k/a "Oso," JAVIER RODRIGUEZ, a/k/a "Ramon Tellez," JOSE CALDERON, a/k/a "Felix," JOSE IRIBE, and ANDRES BUTRON, a/k/a "Chiquilin," the defendants, did knowingly conspire together and with and with diverse other persons known and unknown to the Grand Jury, to

import into the customs territory of the United States of America from the Republic of Mexico, 5 kilograms or more of cocaine, a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 952 and 963.

### Manner and Means and Overt Acts

1. The Manner and Means and Overt Acts as set forth in Count One of the Superseding Indictment are realleged as if fully set forth here.

### COUNT THREE

The Grand Jury further charges that:

On or about March 5, 2005, within the Southern District of Indiana, Indianapolis Division, CHARLES ANDERSON did knowingly possess with the intent to distribute 50 grams or more of a mixture or substance containing cocaine base, commonly known as "crack," a Schedule II Narcotic Controlled Substance, all in violation of Title 21, United States Code Section 841(a)(1).

### COUNT FOUR

The Grand Jury further charges that:

On or about March 7, 2005, within the Southern District of Indiana, Indianapolis Division, JAVIER RODRIGUEZ, a/k/a "Ramon Tellez," and JOSE CALDERON, a/k/a "Felix," did knowingly possess with the intent to distribute 5 kilograms or more of a mixture or substance containing cocaine, a Schedule II Narcotic Controlled Substance, all in violation of Title 21, United States Code, 841(a)(1)

### COUNT FIVE

The Grand Jury further charges that:

15

On March 7, 2005, in the Southern District of Indiana, Indianapolis Division, FLORA ZAVALA-GUTIERREZ, a/k/a "Bertha Zavala-Gutierrez," defendant herein, did, knowing that an offense against the United States has been committed, assist the offender in order to hinder or prevent his apprehension, trial, and punishment; to-wit, knowing that JAVIER RODRIGUEZ conspired to possess with the intent to distribute cocaine concealed JAVIER RODRIGUEZ's identification and cellular telephone to prevent its seizure by law enforcement, in violation of Title 18, United States Code, Section 3.

A TRUE BILL:

_Lavonya Barker_
FOREPERSON

SUSAN W. BROOKS
United States Attorney

By: _Josh J. Minkler_
Josh J. Minkler
Assistant United States Attorney

16